# THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF NORTH CAROLINA
# ASHEVILLE DIVISION
# CRIMINAL CASE NO. 1:19-cr-00122-MR-WCM

| | |
|---|---|
| UNITED STATES OF AMERICA, )<br>)<br>Plaintiff, )<br>)<br>vs. )<br>)<br>ELAINE NIX CHASTAIN, )<br>)<br>Defendant. )<br>_____ ) | **O R D E R** |

**THIS MATTER** is before the Court on the Defendant's letter, which the Court construes as a motion for a reduction in sentence [Doc. 29]; the Government's Opposition to Defendant's Motion for Reduction in Sentence [Doc. 32]; and the Government's Motion to Seal [Doc. 34].

## I.     BACKGROUND

In December 2019, the Defendant Elaine Nix Chastain pled guilty to one count of defrauding a federally-insured financial institution, in violation of 18 U.S.C. § 1005.  [Doc. 8].  Her advisory guideline range was 21 to 27 months' imprisonment.  [See Doc. 18: PSR at ¶ 48].  Prior to sentencing, the Defendant filed a sentencing memorandum, in which she sought a downward departure or variance on the grounds of her lack of criminal history; her suffering from diminished capacity at the time of the offense; and

her return to being a law-abiding citizen. [Doc. 22 at 3-8]. Additionally, she brought to the Court's attention certain aspects of her physical condition and her history of post-partum depression. [Id.]. The Defendant also advised the Court of her various family obligations, including caring for her family members, "particularly her father." [Id. at 8].

In August 2020, the Court granted the Defendant's request for a variance and sentenced her to imprisonment for a term of 12 months plus one day. [Doc. 28]. The Defendant began serving her sentence on November 3, 2020. She is currently housed at FMC Lexington, and her projected release date is September 9, 2021.[1]

The Defendant now seeks a reduction in her sentence pursuant to 18 U.S.C. § 3582(c)(1)(A)(i). [Doc. 29]. For grounds, the Defendant states that she had been the primary caregiver for her father since the death of her mother in January 2019. The Defendant states that since her incarceration, the Defendant's husband has had to care for her father, in addition to working a full-time job and caring for their three children. This situation, the Defendant contends, has placed an enormous amount of stress on her

---

[1] See https://www.bop.gov/inmateloc/ (last visited May 26, 2021).

husband, particularly since his mother—who had been able to assist with caring for the children—died in December 2020. [Id. at 2].

Additionally, the Defendant cites her own health conditions, particularly her dietary and exercise needs due to her bariatric surgery, as a basis for a reduction in sentence. [Id. at 2-4]. She further states that her facility had a "major outbreak" of COVID-19 in December 2020 and that she herself tested positive for the virus at that time. [Id. at 5-6]. The Defendant further argues that the prison is not allowing for adequate social distancing due to persistent overcrowding. [Id. at 6-7].

The Court ordered the Government to respond to the Defendant's motion. [Text-Only Order entered Feb. 2, 2021]. The Government filed a motion to dismiss, arguing that the Defendant had failed to exhaust the necessary administrative remedies prior to filing her motion. [Doc. 30]. The Court denied the Government's motion on March 15, 2021, and ordered the Government to respond to the Defendant's motion on the merits. [Doc. 31]. The Government filed its response on April 15, 2021. [Doc. 32]. Despite being given an opportunity to do so [see Text-Only Order dated Apr. 16, 2021], the Defendant did not file a reply.

## II. DISCUSSION

### A. Motion for Compassionate Release

Section 3582(c)(1)(A), as amended by The First Step Act of 2018, Pub. L. No. 115-391, 132 Stat. 5194, 5239 (Dec. 21, 2018), permits a defendant to seek a modification of her sentence for "extraordinary and compelling reasons," if the defendant has "fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier." 18 U.S.C. § 3582(c)(1)(A). Here, the Defendant has exhausted the necessary administrative remedies. Accordingly, the Court will proceed to address the merits of the Defendant's motion.

As is relevant here, the Court may reduce a defendant's sentence under 18 U.S.C. § 3582(c)(1)(A)(i) for "extraordinary and compelling reasons if "such reduction is consistent with applicable policy statements issued by the Sentencing Commission." 18 U.S.C. § 3582(c)(1)(A)(i). The Court must also consider the factors set forth in 18 U.S.C. § 3553(a), to the extent that such factors are applicable. Id.

Section 1B1.13 of the United States Sentencing Guidelines sets forth the Sentencing Commission's policy statement applicable to compassionate release reductions.  See U.S.S.G. § 1B1.13.  Specifically, the application notes to this policy statement set forth the various circumstances under which the Court can determine that "extraordinary and compelling reasons exist," including: the medical condition of the defendant, the age of the defendant, certain family circumstances, or other reasons.  This policy statement, however, was adopted before the First Step Act, and the Sentencing Commission has not updated the policy statement to account for the fact that defendants are now permitted to file their own motions for compassionate release.  In light of these circumstances, the Fourth Circuit Court of Appeals has held that § 1B1.13 is no longer an "applicable" policy statement that constrains the discretion of the district courts in finding that "extraordinary and compelling reasons" exists to warrant a reduction in sentence.  See United States v. McCoy, 981 F.3d 271, 282 (4th Cir. 2020) ("By its plain terms, . . . § 1B1.13 does not apply to defendant-filed motions under § 3582(c)(1)(A)").  Thus, this Court is "empowered . . . to consider *any* extraordinary and compelling reason for release that a defendant might raise." Id. at 284 (quoting United States v. Zullo, 976 F.3d 228, 230 (2d Cir.

5

2020)). Nevertheless, the Court recognized, that the policy statement "remains helpful guidance even when motions are filed by defendants." Id. at 282 n.7.

Here, the Defendant argues that extraordinary and compelling reasons exist because her elderly father requires care, and that caregiving for him has placed an enormous burden on her husband, who is already caring for three minor children. Section § 1B1.13 contemplates certain family circumstances can qualify as extraordinary and compelling reasons. See U.S.S.G. § 1B1.13, cmt.1(C) (finding extraordinary and compelling reasons upon the death or incapacitation of caregiver of the defendant's minor children or the incapacitation of the defendant's spouse when the defendant would be the only available caregiver). The Defendant's present circumstances, however, do not meet these criteria, as her husband is currently able to care for her minor children.

The Defendant also cites her various dietary and exercise requirements as a result of her prior bariatric surgery. However, the Defendant has not shown that her physical condition substantially diminishes her ability to provide self-care with the prison environment. See U.S.S.G. § 1B1.13, cmt.1(A).

6

Finally, the Defendant cites a "major outbreak" of COVID-19 and the prison's failure to allow for adequate social distancing of inmates as extraordinary and compelling reasons justifying her immediate release. The Defendant's concerns in this regard are mitigated by two factors. First, the Defendant tested positive for the virus in December 2020, was asymptomatic, and apparently made a full recovery. [Doc. 33-1 at 4, 7, 49, 76]. Second, the Defendant was fully vaccinated against the virus as of March 2021. [Id. at 52, 97-99]. As the CDC has noted, vaccine effectiveness studies indicate that the mRNA COVID-19 vaccines can reduce the risk of COVID-19, including severe illness, among people who are fully vaccinated by 90 percent or more.[2] As the Defendant has already contracted the coronavirus and fully recovered, and as the vaccine has significantly reduced (if not eliminated) the risk of her contracting it again, the Court concludes that she cannot meet his burden of establishing that her COVID-19 risk is an extraordinary and compelling reason for her release.

While the Defendant takes issue with the measures taken by FMC Lexington, the Court finds that the BOP has taken significant measures to

---

[2] See https://www.cdc.gov/coronavirus/2019-ncov/vaccines/effectiveness/work.html (last visited May 26, 2021).

protect the health of its inmates during this pandemic. See United States v. Johnson, No. 1:19-cr-00020-MR-WCM, 2020 WL 7646809, at *2-3 (W.D.N.C. Dec. 23, 2020) (Reidinger, C.J.). In addition to these measures, the BOP has begun the process of vaccinating inmates, which will offer inmates further protection from the virus. Indeed, as of May 26, 2021, the Defendant's facility, FMC Lexington, has vaccinated 321 staff members and 781 inmates.[3] Taken together, these measures are designed to mitigate sharply the risks of COVID-19 transmission in BOP institutions while allowing BOP to continue to fulfill its mandate of incarcerating those persons sentenced or detained based on judicial orders. Given BOP's efforts, the fact that the Defendant faces a slight risk of re-contracting the virus while incarcerated, without more, is not sufficient to justify the relief she requests. United States v. Raia, 954 F.3d 594, 597 (3d Cir. 2020) ("[T]he mere existence of COVID-19 in society and the possibility that it may spread to a particular prison alone cannot independently justify compassionate release, especially considering BOP's statutory role, and its extensive and professional efforts to curtail the virus's spread.").

---

[3] See https://www.bop.gov/coronavirus/ (last visited May 26, 2021).

Even if the Defendant could establish an extraordinary and compelling reason for her release, this Court still must consider the § 3553(a) factors, as "applicable," as part of its analysis of determining whether a sentence reduction is warranted. See § 3582(c)(1)(A); United States v. Chambliss, 948 F.3d 691, 694 (5th Cir. 2020).

Here, the Defendant's crime was very serious, as it involved her abusing her position at a bank to make unauthorized transfers and embezzlements of approximately $265,000 from approximately ten bank customers' accounts. After partial reimbursement by its insurance carrier, the bank suffered a loss of over $142,000. [Doc. 18: PSR at ¶ 13]. The advisory guidelines range of 21 to 27 months would have been a reasonable sentence under most circumstances for this offense. Nevertheless, the Court granted a downward variance after taking into account the Defendant's general law-abiding past and her medical problems that contributed to her diminished capacity. In light of the serious nature of the Defendant's crime, the Court finds that the Defendant's sentence of 12 months plus one day adequately promotes respect for the law, provides just punishment, and affords adequate deterrence to both the Defendant and other would-be embezzlers.

At the time that the Court imposed the Defendant's sentence, the Court had before it the defendant's sentencing memorandum that addressed many of the very issues that the Defendant relies upon to argue for a further reduction in her sentence. Thus, these factors have already been taken into account in crafting the Defendant's sentence. The Defendant has pointed to no significant change in circumstance, nor any additional sentencing factor not already taken into account by the Court, that would merit a reduction of her sentence.

In sum, the Court finds that there are no "extraordinary and compelling reasons" for the Defendant's release and that analysis of the relevant § 3553(a) factors continue to weigh in favor of her continued incarceration. Accordingly, the Defendant's motion for a reduction in sentence is denied.

**B.  Motion to Seal**

The Government moves the Court for leave to file under permanent seal the BOP medical records [Doc. 33] filed in support of its Response to the Defendant's motion. [Doc. 34].

Before sealing a court document, the Court must "(1) provide public notice of the request to seal and allow interested parties a reasonable opportunity to object, (2) consider less drastic alternatives to sealing the

documents, and (3) provide specific reasons and factual findings supporting its decision to seal the documents and for rejecting the alternatives." Ashcraft v. Conoco, Inc., 218 F.3d 288, 302 (4th Cir. 2000). In the present case, the public has been provided with adequate notice and an opportunity to object to the Government's motion.  The Government filed its motion on April 15, 2021, and such motion has been accessible to the public through the Court's electronic case filing system since that time.  Further, the Government has demonstrated that the subject medical records contain sensitive information concerning the Defendant and that the public's right of access to such information is substantially outweighed by the Defendant's competing interest in protecting the details of such information. See United States v. Harris, 890 F.3d 480, 492 (4th Cir. 2018). Finally, having considered less drastic alternatives to sealing the documents, the Court concludes that sealing of these medical records is necessary to protect the Defendant's privacy interests.

**IT IS, THEREFORE, ORDERED** that the Defendant's letter, which the Court construes as a motion for a reduction in sentence [Doc. 29], is **DENIED**.

**IT IS FURTHER ORDERED** that the Government's Motion to Seal [Doc. 34] is **GRANTED**, and the medical records [Doc. 33] submitted in support of the Government's Response shall be filed under seal and shall remain under seal until further Order of the Court.

**IT IS SO ORDERED.**

Signed: May 31, 2021

Martin Reidinger
Chief United States District Judge